UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 05-11550-NMG

| | |
|---|---|
| LINDA M. GLENNON,<br>    Plaintiff,<br><br> -against-<br><br>REEBOK, INTERNATIONAL,<br>LTD., DONNA FLOOD,<br>Individually and in her official<br>capacity at Reebok and DAVID C.<br>MISCHLER, Individually and in his<br>official capacity at Reebok,<br>    Defendants. | **AMENDED<br>COMPLAINT AND<br>JURY DEMAND** |

## Nature of the Action

1. This is an action brought pursuant to M.G.L. Section 151B and pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. Ch. 126, Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Ch. 14, Title VII and Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601, *et seq.*, for discrimination on the bases of age, disability and gender, for retaliation and for violation of a protected leave of absence under the FMLA.

## The Parties

2. Plaintiff, LINDA GLENNON ("Plaintiff"), resides at 134 West Lake Drive, Weymouth, Norfolk County, Massachusetts.

3. At all times relevant to this Complaint, Plaintiff was an employee of the Defendant, Reebok International, LTD.

4. Defendant, REEBOK INTERNATIONAL LTD., ("Reebok") is a corporation doing business in the Commonwealth of Massachusetts, with its corporate headquarters located at 1895 R.W. Foster Boulevard, Canton, MA.

5. Defendant, DONNA FLOOD ("Flood") is or at all times relevant to this complaint was the Senior Director International Sales Operations/Inventory Management and resides at 160 Brookdale, Kingston, MA.

6. Defendant, DAVID MISCHLER ("Mischler") is or at all times relevant to this complaint was the Vice President of Global Operations for Reebok and his place of business is 1895 R.W. Foster Boulevard, Canton, MA.

## Jurisdiction and Venue

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331, 42 U.S.C. Ch. 126, 29 U.S.C. Ch.14, Title VII, 29 U.S.C. Ch. 28, and supplemental jurisdiction over the Plaintiff's state-based claim pursuant to M.G.L. Section 151B.

## Procedural Prerequisites

8. On July 30, 2004, the Plaintiff filed a Charge of Discrimination on the bases of age, disability, gender, retaliation, and violation of the FMLA with the Massachusetts Commission Against Discrimination ("MCAD").

9. The MCAD issued its Dismissal and Notification of Rights to the Plaintiff on September 29, 2005.

10. The Plaintiff appealed the MCAD's determination on October 10, 2005 and a hearing was held on the appeal on November 21, 2005.

11. On ___, the MCAD issued its determination denying the appeal.

**Factual Background**

12. The Plaintiff is 44 years of age; her date of birth is September 10, 1961.

13. The Plaintiff was employed by Defendant Reebok from August, 1994 to September, 2003, except for a brief period of approximately 6 weeks in 1995 when she was laid-off and then rehired by Defendant Reebok.

14. Defendant Reebok is a business which engages in commerce and is in an industry and activity effecting commerce.

15. At all times relevant to this action, Defendant Reebok employed more than 50 employees at its facility in Canton, MA, where the Plaintiff worked.

16. At all times relevant to this complaint, the Plaintiff was employed by Defendant Reebok and in 1999 was promoted to Manager of International Sales Operations.

17. As a Manager of International Sales Operations, the Plaintiff was responsible for overseeing the area of pricing and sample management, managing the sales order window openings and quarterly uploads of pricing and standard costs, and compiling and issuing the International Product Newsletter.

18. As part of the Plaintiff's responsibilities, she reported directly or indirectly to Defendants Flood and Mischler.

19. Defendant Flood was the Plaintiff's direct supervisor.

20. Defendant Mischler was Defendant Flood's direct supervisor and the Plaintiff's indirect supervisor.

21. As such, both Defendants Flood and Mischler exercised substantial control over the Plaintiff.

22. Throughout the Plaintiff's entire career with Defendant Reebok, all of her performance reviews were good to excellent and her performance always exceeded adequate.

23. The Plaintiff was promoted into a management level position in 1999 and was thereafter given raises, promotions, merit and spot bonuses.

24. The Plaintiff managed a staff of four to five people, met her goals and production requirements, and was given additional management duties by Defendant Flood when other management staff were terminated.

25. The Plaintiff was commended for her work by others from within and outside of Defendant Reebok, and received many letters and e-mails of praise.

26. The Plaintiff suffered from a condition in both feet known as "Hammer Toe" and required treatment, including surgical interventions.

27. The Plaintiff also suffered from a diagnosed condition of bone spurs in her neck and back.

28. The Plaintiff's workstation was ergonomically adjusted by Defendant Reebok to provide an accommodation for her bone spurs condition.

29. The Plaintiff was disabled in that she had physical impairments that substantially limited one or more major life activities.

30. There was a record at Defendant Reebok of the Plaintiff having such impairments.

31. The Plaintiff was regarded by Defendant Reebok as having such impairments.

32. Defendant Reebok was well aware of the Plaintiff's medical conditions, her impairments and the need for surgeries.

33. The Plaintiff was able to perform the essential functions of her job with or without a reasonable accommodation.

34. This ability to perform the essential functions of her job is reflected by the Plaintiff's performance reviews and bonuses that she received for her job performance.

35. As a result of her need for a surgical procedure for her Hammer Toe in June 2003, the Plaintiff requested and was granted approval by Defendant Reebok to take an FMLA leave of absence beginning in July, 2003 and continuing until September, 2003.

36. Plaintiff's request for FMLA leave from Defendant Reebok was in full compliance with the requirements of the FMLA.

37. Defendant Reebok designated the Plaintiff leave as FMLA leave.

38. The Plaintiff was able to delegate responsibilities to her staff to insure an uninterrupted continuum of work and service while on leave. She was in contact with her staff and was able to monitor and direct the staff as needed.

39. Defendant Reebok and Defendant Flood were aware of the Plaintiff's continuing monitoring and correspondence with her staff while she was out on FMLA leave.

**Adverse Employment Actions**

40. Defendant Flood told the Plaintiff on more than one occasion in 2003 that she wanted to and was considering replacing the Plaintiff because the company needed "fresh young healthy blood."

41. Defendant Flood also told the Plaintiff that she wanted someone who would not be out on disability leave, out for medical reasons or out having children.

5

42. The Plaintiff was told by Defendant Flood before she took her FMLA leave in June 2003, and in telephone calls to the Plaintiff at home while she was out on FMLA leave, that the Defendants were looking to replace her with someone younger and someone who wouldn't be out of work because of physical impairments.

43. On or about July 14, 2003, the Plaintiff was told by Defendant Flood not to call or talk with any of the Plaintiff's staff members but to only communicate with Susan Telless, the staff member that Defendant Flood stated she had selected to replace the Plaintiff.

44. On or about August 29, 2003, Defendant Flood called the Plaintiff while the Plaintiff was out on FMLA leave at home recovering from surgery and told the Plaintiff that Flood had made some changes that the Plaintiff was not going to be happy with and that Flood would discuss them with the Plaintiff when Flood returned from Florida.

45. Defendant Mischler was aware of the action of Defendant Flood but he did not curtail Defendant Flood's discriminatory comments or behavior towards the Plaintiff or take any investigatory or disciplinary actions against Defendant Flood for her actions which were discriminatory and in violation of the FMLA.

46. Defendant Mischler did not intervene and correct the situation with the Plaintiff, but instead informed the Plaintiff that he had to back up his direct report, Defendant Flood, thus overtly supporting Defendant Flood's actions.

47. The Plaintiff was terminated from employment on September 4, 2003 by Defendant Flood and Defendant Reebok upon her return from FMLA leave.

48. Defendants Reebok and Flood violated the FMLA by terminating the Plaintiff for their stated reason that the Plaintiff took FMLA leave to have surgical treatment of her physical condition and to recover from said surgery.

49. Defendant Mischler told the Plaintiff that there were no opportunities comparable to her position or otherwise available at Defendant Reebok, when the Plaintiff returned from FMLA.

50. The Plaintiff was also informed by Ted Manley, a decision maker in the HR department at Reebok that there were no comparable positions or any other employment opportunities for her at Reebok.

51. The Plaintiff was replaced by a younger employee, Susan Telless, who was under 40 years of age.

52. The above employment actions Defendants Reebok, Flood, and Mischler constitute intentional and wanton age and disability discrimination.

53. Defendants Reebok, Flood, and Mischler violated the FMLA and retaliated against the Plaintiff by terminating her because she took a medical leave pursuant to the FMLA, a protected activity.

54. Defendant Flood in June and August of 2003, asked the Plaintiff whether she intended to have children and indicated to the Plaintiff that she did not want anyone on her staff who would be out on leave for the purpose of having children or caring for children.

55. Defendant Flood requested that the Plaintiff share a hotel room on a business trip with three other women and share a bed with one of them.

56. Defendant Flood has also harassed other female employees based on their need to take leave to care for children or elderly family members.

57. Paul Harrington, then Vice President of Global Operations at Defendant Reebok, made comments in a meeting in the presence of the Plaintiff that the company (Defendant Reebok) did not want anyone working in Operations with kids, but wanted to hire young professionals who wouldn't take any leave time but who would just come in and work, work, work.

58. Colin Clark, Vice President of Rockport International Sales, constantly made sexually offensive and sexist remarks. These statements include asking the Plaintiff to sleep with another employee in order to expedite his footwear order.

59. The above employment actions by Defendants Flood and Reebok constitute a pattern of on-going intentional and wanton hostile work environment gender based discrimination and a continuing violation of the laws prohibiting gender discrimination.

### **Count I: Age Discrimination- Disparate Treatment**

60. The Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 59.

61. The Plaintiff's age was a determining factor in the harassment of the Plaintiff, the subjecting of the Plaintiff to a hostile work environment and the termination of the Plaintiff by Defendants Reebok, Flood, and Mischler.

62. The Plaintiff was replaced by a person under the age of forty (40) years of age.

63. The discriminatory actions of the Defendants Reebok, Flood, and Mischler were knowing and willful.

64. As a result of the action of the Defendants, the Plaintiff suffered damages, injury and/or illness.

### Count II: Disability Discrimination

65. The Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 64.

66. The Plaintiff's disability was a determining factor in the harassment of the Plaintiff, the subjecting of the Plaintiff to a hostile work environment and the termination of the Plaintiff by Defendants Reebok, Flood and Mischler.

67. The Defendants Reebok, Flood and Mischler had knowledge that the Plaintiff had a disability as a result of the Plaintiff's medical conditions, and there was a record of these impairments.

68. The Defendants terminated the Plaintiff despite having knowledge of these impairments and approving an authorized FMLA leave for the Plaintiff.

69. The discriminatory actions by the Defendants Reebok, Flood and Mischler were knowing and willful acts constituting age discrimination.

70. As a result of this action by the Defendants, the Plaintiff suffered damages, injury and/or illness.

### Count III: Gender Discrimination & Sexual Harassment

71. The Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 70.

72. The Plaintiff's gender was a determining factor in the harassment of the Plaintiff and the subjecting of the Plaintiff to a hostile work environment by Defendants Flood and Reebok.

73. Defendant Flood's discriminatory comments in June and August 2003 were the most recent, preceded by other management level representatives of Defendant Reebok.

74. These discriminatory comments by Defendant Flood and representatives of Defendant Reebok were knowing and willful and constitute a continuing and on-going pattern of gender discrimination and hostile environment sexual harassment.

75. As a result of the actions by the Defendants, the Plaintiff suffered damages, injury and/or illness.

## Count IV: FMLA Violation

76. The Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 75.

77. The Plaintiff rightfully and lawfully took FMLA leave in the summer of 2003.

78. The Defendant Flood notified the Plaintiff by telephone while she was still out on FMLA leave in August, 2003 that the Plaintiff was going to be terminated and then terminated the Plaintiff immediately after her return from FMLA leave.

79. Defendants Reebok, Flood and Mischler did not protect the Plaintiff's position while she was out on FMLA leave, nor did they offer her a comparable position upon her return from leave.

80. The actions by the Defendants Reebok, Flood and Mischler against the Plaintiff were knowing and willful violations of the FMLA.

81. Defendants Mischler and Reebok violated the FMLA by being aware of the actions of his direct report, Defendant Flood, of terminating the Plaintiff because

of the Plaintiff's lawful exercising of her FMLA rights, by overtly supporting Defendant Flood's actions, by failing to curtail Defendant Flood's violative and discriminatory actions, by failing to take any investigatory or disciplinary actions against defendant Flood for her actions.

82. As a result of the actions by the Defendants, the Plaintiff suffered damages, injury and/or illness.

### Count V: Retaliation Claim

83. The Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 82.

84. The harassment of the Plaintiff, the subjecting of the Plaintiff to a hostile work environment, and termination of the Plaintiff by Defendants Reebok, Flood and Mischler, constituted retaliation against the Plaintiff because she requested an accommodation for her disability and requested and took an authorized and approved FMLA leave.

85. The retaliatory actions by Defendants Reebok, Flood and Mischler were knowing and willful.

86. As a result of the actions of the Defendants, the Plaintiff suffered damages, injury and/or illness.

WHEREFORE, THE Plaintiff demands that the Court grant the following relief:

2. Enter judgment in favor of the Plaintiff and against the Defendants;

3. Award back pay (including benefits) to the Plaintiff from the dates of the discriminatory and violative acts through the date of trial;

4. Award front pay to the Plaintiff in an amount deemed appropriate by the Court;

5. Award damages of emotional distress to the Plaintiff;

6. Award punitive, liquidated and/or multiple damages against the Defendants; and

7. Award reasonable attorney's fees, expert witness fees and costs to the Plaintiff and grant such other and further relief that the Court may deem just and proper.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**.

Dated: January 30, 2006

*/s/ Michael A. Zeytoonian*
Michael A. Zeytoonian
Hutchings, Barsamian, Cross, Mandelcorn & Zeytoonian, LLP
Attorney for Plaintiff
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Tel: (781) 431-2231
BBO # 558383

### CERTIFICATE OF SERVICE

I, Michael A. Zeytoonian, do hereby certify that on this date, I mailed, first class, postage prepaid, and via electronic filing with this Court, the attached Plaintiff's Amended Complaint and Jury Demand to the Defense Counsel of Record below, attorneys for the Defendants:

>Lisa J. Cooney, Esq.
>Manchel & Brennan, P.C.
>Attorney for Defendant Reebok
>199 Wells Avenue, Suite 301
>Newton, MA 02459

>*/s/ Michael A. Zeytoonian*
>Michael A. Zeytoonian
>Hutchings, Barsamian, Cross, Mandelcorn & Zeytoonian, LLP
>110 Cedar Street, Suite 250
>Wellesley Hills, MA 02481
>(781) 431-2231
>BBO# 558383

Date: January 31, 2006